Lehman, Abraham & Co. vs. McFarland & Dupré.

## No. 8817.

### LEHMAN, ABRAHAM & CO. VS. McFARLAND & DUPRÉ.

In order to justify an attachment of his debtor's property, under the provisions of paragraphs 4 and 5 of Art. 240 of the Code of Practice, the attaching creditor must prove that the sale or disposition which the debtor is about to make of his property is with the intention of defrauding his creditors, or of giving an undue preference to some of them.

Proof that the debtor is offering his property for sale, in order to realize funds for the payment of all his debts and liabilities, accompanied by a declaration of such purpose to the attaching creditor himself, will not justify an attachment.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston, J.*

*Braughn, Buck & Dinkelspiel* and *E. D. White* for Plaintiffs and Appellants:

An attachment sued out on paragraphs 4 and 5 of Art. 240. C. P., should be maintained, when defendants, who are sued upon an undisputed debt, are on the eve of disposing of all their property, and are paying by preference certain of their creditors.  24 An. 258.

The denial by defendant, as a witness in his own behalf, that he intended to dispose of his property to defraud his creditors, and the proof being that although having in hand money sufficient to pay the claim—pressed to payment—but refusing and at the same time paying other creditors, is just cause for the issuance of the writ.  24 An. 128; 29 An. 635.

A payment made to one creditor, well knowing the inability to meet when due claims of other creditors, is a preference entitling other unpreferred creditors to the attachment.    29 An. 635.

Whilst a suit of this character is always deemed a harsh remedy and the laws relative to attachments strictly construed, yet under certain circumstances and conditions the writ to creditors is an absolute essential to protect them from loss; and when creditors have good reason to feel or believe themselves entitled to this remedy, the Courts will protect them in the exercise of the same.  Baldwin & Co. vs. Mumford & Co. (not yet reported).

*Percy Roberts* for Defendants and Appellees.

The opinion of the Court was delivered by

POCHÉ, J.  On the 2d day of November, 1882, plaintiffs, as commission merchants, sold to the defendants, owners of a rice mill and dealers in rice in this City, a lot of rice for the sum of $2,878.05, payable in ten days.  As the 12th day of November was a Sunday, the bill matured the next day; on which day demand of payment was made by plaintiffs, but without success, and on the next day they brought suit on their bill, accompanied by attachment, which was executed on the defendants' rice mill and other property.

The grounds urged for their attachment were, substantially, that the defendants " have mortgaged, assigned or disposed of, or are about to mortgage, assign and dispose of their property, rights or credits or some part thereof, with intent to defraud their creditors or give an unfair preference to some of them, and that they have converted or are

Lehman, Abraham & Co. vs. McFarland & Dupré.

about to convert their property into money or evidences of debt, with intent to place it beyond the reach of their creditors, and that a writ of attachment is necessary to protect the rights of affiants' firm in the premises."

The record contains no evidence in support of plaintiffs' allegations, or shows any state of facts to justify the harsh remedy of attachment against these defendants; hence their motion for the dissolution of the same, on the alleged untruth of the averments on which it was issued, was properly maintained by the lower court.

The record shows that the defendant firm, owing to heavy losses sustained in speculations in rice, had become financially embarrassed and so badly crippled, that their business could not longer continue. The partners, therefore, concluded to sell their mill for the purpose of meeting their obligations, and this intention was at once communicated to their heaviest creditors, including the plaintiffs in this suit.

To the end of accomplishing their purpose, the defendants called on their largest creditors, to whom they exhibited a statement of their financial condition, asking for a few days' extension on their maturities so as to realize on the proposed sale. The extension was granted by all the large creditors with the exception of plaintiffs, who pressed their debtors for an immediate settlement of their claim, or for security, such as an endorsement or a lien or privilege on the defendants' mill. After vain and unsuccessful efforts to raise the needed funds or the security required by plaintiffs, the defendants declined to give the lien and privilege asked, unless plaintiffs agreed to accept said lien concurrently with the house of Bush & Levert, and the firm of Maxwell & Peale, the other heaviest creditors of the defendants. Without formally declining this proposition, plaintiffs instituted these proceedings.

The record not only fails to show any fraudulent design of the defendants, but it proves conclusively an honest, honorable and persistent intention on the part of these unfortunate debtors to make any sacrifice necessary to the payment of all their debts and liabilities.

Had they followed the suggestion made by plaintiffs, and had they given to the latter the lien or privilege which they demanded, their conduct would then have made them liable to attachment on the part of their other creditors.

The Court can have no concern with the use which the defendants made of the proceeds of the rice which they had bought from plaintiffs, or of other funds in their possession at the time that plaintiffs' bill matured.

The prohibition of the law only contemplates the sale, mortgaging

79

or otherwise disposing of their *property* by debtors, with the intention of thereby defrauding their creditors. The proposed disposition of their property by these defendants was in the interest of their creditors, whom they proposed to place on a footing of equality and fairness, and hence, the attachment against them was absolutely unjustifiable. Hernsheim & Bro. vs. Levy, 32 An. 340; C. C. 1986; 9 An. 535, Feche vs. Barriere.

Judgment affirmed.

### DISSENTING OPINION.

TODD, J. The following are the facts and circumstances attending the issuing of the writ of attachment as I find them in the record.

The defendants are the proprietors of a rice mill in this city. They buy rough rice, and by a milling process prepare the marketable article, the clean rice, for sale and consumption. The plaintiffs, having on consignment to them as commission merchants a lot of rough rice, sold it to the defendants for $2,878.05, payable in ten days from the sale. When the debt matured they, defendants, refused to pay the price or sum stated, or any part thereof. It appears from the evidence, and mainly from the testimony of the defendants themselves, who were sworn as witnesses on the trial, that the rice bought of the plaintiffs was, in a few days after the purchase, prepared for market and sold and the cash realized therefor before the debt to plaintiffs matured. That the defendants used the funds, derived in part from the sale of this rice, to pay, on the very day that plaintiffs demanded their money, $2,042.68 to one party, and $1,000 to another, and $234.05 to another. After paying these, they had in cash, the same day, $1,785 left, partly derived from the sale of plaintiffs' rice, yet they refused to pay this amount to plaintiffs, or any part of it, although plaintiffs agreed, if part of the debt was paid, to give an extension of time for the residue. It appears, moreover, from the testimony of one of the defendants, that their excuse for not paying plaintiffs out of this fund was, that they wanted to keep it to pay another debt, which was not then due, but which they preferred paying to plaintiffs'. At this time their stock of rice was wholly exhausted, and the only means to pay plaintiffs' debt, as they said, was out of the mill when sold, and which they stated they were endeavoring to sell. On the next day after their refusal to pay plaintiffs, the $1,785 cash to their credit in the bank was withdrawn. Three days thereafter plaintiffs filed their suit, and other creditors followed. Plaintiffs' suit was defended and payment of their demand resisted. The other suits defendants let go by default, although on the witness stand they acknowledged that plaintiffs' claim was a just one.

I think, from this state of facts, that after being denied any participation in the fund partly derived from the sale of their own property, and that entire fund having been paid over in part to others, and retained in part by the defendants themselves, plaintiffs might reasonably conclude that they had no guarantee whatever that, when another fund was created by the sale of the mill, granting that such sale was desired and would be effected, they would fare any better with respect to that fund than they had with the previous one, and doubtless believed that like preferences over them would again be shown, and like refusals to pay them be repeated.

So, concluding, they were fully justified in their apprehensions respecting their debt, and justified, too, in my opinion, in resorting to an attachment as affording the only reasonable hope of realizing their claim.

The acts of the defendants, respecting this transaction, should be taken as better evidence of their real intentions than the declarations of their good intentions declared on the trial of the case.

The law, under which the plaintiffs proceeded, purports to have been enacted for the protection of creditors against attempts on the part of the debtor to place his property beyond their reach, or to give unjust and illegal preferences. If it is not available to creditors, under like circumstances as shown in this case, but is to be turned to their detriment and loss, however honestly and in good faith they may seek the remedy, then, instead of proving a protection, the law becomes a delusion and a snare. I think the attachment was improperly dissolved.

I, therefore, dissent.

Rehearing refused.